FILED
2007 Mar-20 PM 02:28
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| TRACY SHERMAN,         ] | |
| ] | |
| **Plaintiff,**          ] | |
| ] | |
| v.                     ] | CIVIL ACTION NO. |
| ] | 2:06-CV-100-VEH |
| MICHAEL DEE WORCESTER, ] | |
| et al.,                ] | |
| ] | |
| **Defendants.**        ] | |

## MEMORANDUM OPINION

Before the court is the balance of Defendant Chavis Bauer's Motion for Summary Judgment (doc. 18). This matter has been fully briefed and is ripe for review. For the reasons stated herein, the balance of Bauer's Motion for Summary Judgment, as to Plaintiff's agency based negligence claims, is due to be **GRANTED**.

### I.    Facts and Procedural History

On January 17, 2004, Sherman, a Florida resident, was injured while traveling as a passenger in a 2000 Geo Metro ("car") that was being operated by Worcester, who is an Alabama resident. (Compl., ¶ 3; Bauer Affidavit, ¶ 2). The accident took place in Shelby County, Alabama. (Compl., ¶ 3).

On the date of the accident, the car was owned by Chavis Bauer. (Bauer

Affidavit, ¶ 2). In 2002, Bauer loaned the car to his sister, Brandy Johnson,[1] who "made payments on it" from that time until the date of the accident. (Bauer Affidavit, ¶ 3). On several occasions during the time in which the car was in Johnson's possession, Bauer told her that no one other than she had his permission to drive the car. (Bauer Affidavit, ¶ 4). On one occasion, Bauer specifically told Johnson that Worcester did not have permission to drive the car. (*Id*.) Sherman never heard Bauer give Worcester permission to drive the car. (Sherman Deposition, p. 31, lines 19-22, p. 34, lines 1-3). On the date of the accident, Bauer did not give Worcester permission to drive the car nor was Bauer aware that Worcester was driving the car on that date, prior to being contacted by police officers who informed Bauer that his car had been involved in an accident. (Bauer Affidavit, ¶¶ 5, 6; Sherman Deposition, p. 29, lines 19-23, p. 30, lines 1-23, p. 31, lines 14-18, 19-22, p. 32, lines 16-21, p. 34, lines 1-3).

Sherman alleges that, as a result of the accident, she sustained bruises and contusions to her ribs, chest, shoulder, and pelvis, that she is permanently injured, and that she suffered mental anguish and emotional distress. (Compl., ¶ 4). Plaintiff's Complaint asserts claims for conspiracy, misrepresentation, and negligence and wantonness against all Defendants and asserts a claim for negligent entrustment

---

[1] Brandy Johnson is a defendant in the above-styled action.

against Bauer and Johnson.

Bauer filed a Motion for Summary Judgment seeking a final judgment in his favor as to all claims asserted against him; however, Bauer submitted a brief only as to Sherman's negligent entrustment claim. Nonetheless, the court granted summary judgment as to all claims against Bauer.[2]

On January 18, 2007, Sherman filed a Motion to Reconsider the court's granting of summary judgment as to the claims asserted against Bauer. Sherman advanced three arguments in support of her motion: (1) that Sherman's failure to respond to Bauer's Motion for Summary Judgment was the result of inadvertence or excusable neglect on the part of Sherman's attorney; (2) that the court improperly granted Bauer's Motion for Summary Judgment as to Sherman's claim for negligent entrustment; and (3) that the court committed error by failing to consider Sherman's claims for negligence based on an agency relationship that allegedly exists between Bauer and Worcester. The court rejected Sherman's first two arguments and allowed for briefing on the issue of summary judgment as to Sherman's claims for negligence based on an agency relationship between Bauer and Worcester. The court now addresses those claims.

## II.   Standard of Review

---

[2]Sherman did not oppose the Motion.

Under Fed. R. Civ. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and, by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324.

The substantive law will identify which facts are material and which are irrelevant. *Chapman*, 229 F.3d at 1023; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *Chapman*, 229 F.3d at 1023; *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving

party." *Anderson*, 477 U.S. at 248; *Chapman*, 229 F.3d at 1023. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. *See Fitzpatrick*, 2 F.3d at 1115-17 (citing *U.S. v. Four Parcels of Real Property*, 941 F.2d 1428 (11th Cir. 1991)(*en banc*)). If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial. *Fitzpatrick*, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial. Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to *affirmatively* show the absence of any evidence in the record in support of a judgment for the non-moving party on the issue in question. This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires the movant to point out to the court that there is an absence of evidence to support the non-moving party's case. *Fitzpatrick*, 2 F.3d at 1115-16. If the movant meets its initial burden by using this second method, the non-moving party may either point to evidence in the court record, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts. *Lewis v. Casey*, 518 U.S. 343 (1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

While this court is not required to examine every item of evidence before it when considering a motion for summary judgment, it must make certain that the motion is "supported by evidentiary materials." *One Piece of Real Property*, 363

F.3d at 1101. At the least, this court must consider all the evidence submitted by the movant in support of its motion. *Id.*, citing *Jeroma v. Massey*, 873 F.2d 17, 20 (1st Cir. 1989) (per curiam) ("... the district court must review the motion and the supporting papers to determine whether they establish the absence of a genuine issue of material fact.").[3]

If the nonmovant has not supplied the court with a response to dispute any issue of fact, this court may receive the movant's factual account as "a prima facie showing of its entitlement to judgment." *Eversley v. Mbank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988), citing *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## III.   Discussion

The Alabama Supreme Court has held, "Our decisions are clear to the effect that proof of ownership of a motor vehicle causing injury raises an administrative presumption that the person in possession and control of the vehicle is the agent or servant of the owner, and is acting within the line and scope of his employment."

---

[3] This court reviewed all of the available evidentiary material in this case when analyzing the merits of the motion at bar.

*Goggins v. Miller Transporters, Inc.*, 290 Ala. 326, 328, 276 So.2d 571, 574 (Ala. 1973).  The "'administrative presumption' is not in itself evidence." *Pryor v. Brown & Root USA, Inc.*, 674 So.2d 45, 48 (Ala. 1995).  "[I]n practice their effect is merely to impose upon the defendant the burden of showing that the driver was not his agent, or that, if he was, he was not acting within the scope of his authority or in the course of his employment." *Id.* at 48-49

As in the case at bar, once ownership of the vehicle has been established, a plaintiff has effectively evoked the administrative presumption, and that plaintiff

> need not offer further proof that the operator of the vehicle was the agent of defendant, and was acting in the line and scope of his authority, until and unless defendant has offered proof that he was not acting for defendant in the line and scope of his authority.  And if defendant makes that proof and it is not contradicted, either expressly or inferentially, defendant is entitled to the affirmative charge.  But if there is any evidence which reflects upon the credibility of that evidence by defendant on that question, or from which an inference may be drawn to a different result, whether such evidence was produced by defendant or plaintiff, the question of whether the operator of the vehicle was defendant's agent acting in the line and scope of his authority should be submitted to the jury.

*Pryor*, 674 So.2d at 48-49 (quoting *Durbin v. B.W. Capps & Son, Inc.*, 522 So.2d 766, 767 (Ala. 1988)).

In its January 31, 2007, Memorandum Opinion and Order, the court summarized Sherman's Complaint as alleging that (1) Worcester was operating the

car as Bauer's agent; and (2) Bauer's negligent and wanton conduct led to Sherman's injuries. The court further noted that, as Bauer concedes that he owned the car at the time of the accident, there exists an administrative presumption that Worcester was Bauer's agent and that Worcester was acting within the limits and scope of that relationship. *See Pryor, supra*.

Under Alabama law, when considering a negligence claim based on an agency theory, this court must address two issues. First, the court must determine whether Bauer has presented uncontroverted evidence that Worcester was not acting as Bauer's agent at the time of the accident. If it appears that it is possible that Worcester was acting as Bauer's agent at the time of the accident, the court, in order to grant summary judgment on Bauer's behalf as to these claims, must be able to find that Worcester was acting outside of the limits and scope of his agency. *See Pryor, supra*, 674 So.2d at 48-49.

"For an agency relationship to exist, there must be a right of control by the principal over the agent." *Jackson v. Searcy*, 628 So.2d 887, 889 (Ala.Civ.App. 1993) (citing *Bay Shore Properties, Inc.*, 565 So.2d 32 (Ala. 1990). "The right of control need not be exercised, so long as the right actually exists. Furthermore, there must be a meeting of the minds of both the parties as to the scope of the agent's employment." *Id*.

Because there is uncontroverted evidence before the court that Worcester was not about Bauer's business when driving Sherman to her place of work on the date of the accident, the court need not decide whether Bauer has presented uncontroverted evidence that Worcester was not acting as Bauer's agent at the time of the accident.[4]

It is a long-established principle of Alabama law that, "The agent must not put himself into such relations that his own interests or the interests of others whom he also represents become antagonistic to those of his principal. The agent will not be permitted to serve two masters without the intelligent consent of both." *Clay v. Cummins*, 77 So. 328, 329 (Ala. 1917). Stated differently, Alabama's Supreme Court has held that

> [t]o authorize the submission of the question to the jury, the evidence must have a tendency either directly or by reasonable inference to show that the wrong was committed by the agent while he was executing his agency, that is, undertaking to execute the duties assigned to him and not from a motive or purpose of his own having no relation to the business of the master.

\* \* \*

---

[4]The court notes that Sherman does not address the uncontroverted evidence or Bauer's arguments that, because Worcester was on a strictly personal errand at the time of the accident, Bauer cannot be held liable under Alabama law for Worcester's actions. In the absence of evidence to the contrary, once Bauer argued that, based on the evidence of record, Worcester was acting outside of Bauer's control on the date of the accident, the burden shifted to Sherman to put forth evidence that could negate Bauer's argument and the evidence before the court. *See Pryor*, 674 So.2d at 48-49.

> The conduct of the employee, to come within the rule, must not be impelled by motives that are wholly personal, or to gratify his own feelings or resentment, but should be in promotion of the business of his employment.

*Solmica of the Gulf Coast, Inc. v. Braggs*, 232 So. 2d 638, 642-643 (Ala. 1970).

Bauer did not know that Worcester was driving the car on the date of the accident. (Sherman Deposition, p. 56, lines 11-20; Bauer Affidavit, ¶ 6). In the case at bar, the evidence is clear and uncontested that Worcester was not about Bauer's business at the time of the accident in which Sherman was injured. Rather, Worcester was on a strictly personal errand.

At the time of the accident, Sherman was employed, but neither she nor her husband owned a car. (Sherman Deposition, p. 22, lines 9-12). Sherman regularly paid Worcester to drive her to work using Bauer's car, and she testified that, if Worcester had not done so, she would not have gone to work. (Sherman Deposition, p. 22, lines 5-8 and 13-15). Sherman testified that Worcester drove her to work or other places before the day of the accident, and she paid him "every time." (Sherman Deposition, p. 23, lines 14-19). On the day of the accident, Sherman paid Worcester $5.00 in cash to drive her to work. (Sherman Deposition, p. 23, lines 4-13). When asked why Worcester required payment to drive her, Sherman answered "He needed gas money to take me anywhere." (Sherman Deposition, p. 25, lines 7-12).

There is no evidence that Bauer received any money or other benefit from Sherman's and Worcester's arrangement nor is there any evidence that Bauer was aware of or consented to that same arrangement. To the contrary, Sherman's employment of Worcester was for each of their own mutual benefit. Simply, Sherman employed Worcester to drive her to work on the date of the accident. Worcester accepted $5.00 in cash for the task. As such, Worcester was acting outside of the control of Bauer and he was serving two masters at the time of the accident.

Because there is no evidence on record to dispute the evidence that Worcester was on a strictly personal errand at the time of the accident, Sherman's negligence claims based on an agency relationship between Bauer and Worcester are not properly submitted to a jury. *See Solmica of the Gulf Coast, Inc.*, *supra*. Consistent with the *Pryor* decision, Bauer has met his burden to overcome the administrative presumption by coming forth with uncontroverted evidence that Worcester was acting outside of the scope of Bauer's control at the time of the accident. 674 So.2d at 48-49. Accordingly, summary judgment is due to be granted in favor of Bauer as to Sherman's claims of negligence based on an agency relationship between Bauer and Worcester.

A separate Order will be entered consistent with this Memorandum Opinion.

**DONE** this the 20th day of March, 2007.

                                                *[signature]*
                                               **VIRGINIA EMERSON HOPKINS**
                                               United States District Judge